# UNITED STATES DISTRICT COURT

SOUTHERN District of NEW YORK

RONALD FEDDERWITZ,

Plaintiff(s),

- against -

METROPOLITAN LIFE INSURANCE COMPANY INC.'S DISABILITY UNIT, as Claims Administrator, PHILIPS ELECTRONICS NORTH AMERICA CORPORATION GROUP WELFARE BENEFIT PLAN, and ERISA ADMINISTRATION COMMITTEE, as Plan Administrator,

Defendant(s).

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **05 CV 10193**

JUDGE JONES

TO: (name and address of defendants)

SEE ATTACHED SHEET

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

BINDER & BINDER, P.C.
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
CLERK

(BY) DEPUTY CLERK

DATE DEC - 5 2005



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RONALD FEDDERWITZ,

                          Plaintiff,

- against -

METROPOLITAN LIFE INSURANCE COMPANY
INC.'S DISABILITY UNIT, as Claims
Administrator, PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION GROUP WELFARE
BENEFIT PLAN, and ERISA ADMINISTRATION
COMMITTEE, as Plan Administrator,

                          Defendant.
-----------------------------------------------------------X

05 CV 10193

Civil Action No. JUDGE JONES

**COMPLAINT**

RECEIVED
DEC 05 2005
U.S.D.C. S.D.N.Y.

Plaintiff, Ronald Fedderwitz, by his attorneys, BINDER & BINDER, P.C., for his Complaint against the Defendants, METROPOLITAN LIFE INSURANCE COMPANY, INC'S. DISABILITY UNIT ("Metlife") as Claims Administrator, PHILIPS ELECTRONICS NORTH AMERICA CORPORATION GROUP WELFARE BENEFIT PLAN, ("The LTD PLAN"), and ERISA ADMINISTRATION COMMITTEE C/O PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, as ("Plan Administrator"), alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2. Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001 et seq.), the Long Term Disability plan at issue in this litigation must contain provisions for administrative or internal appeal of a denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

## NATURE OF ACTION

4. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee welfare benefit plan. Upon information and belief, Philips Electronics North America Corporation, ("Philips") sponsored and funded the above-captioned LTD Plan.

5. Metlife has made all of the claims decisions in this matter, and is the named Claims Administrator. Defendant, the LTD Plan, provides plan participants with group Long Term Disability benefits paid for through an insurance policy issued by MetLife.

6. As Defendant, the LTD Plan is an employee benefit welfare plan, established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action. Said benefits were effective at all times relevant hereto.

## THE PARTIES

7. Plaintiff was born on November 3, 1940, is presently 65 years old and is a resident of Centereach, New York.

8. Defendant, Metlife, is an insurance company licensed to conduct the business of insurance in the State of New York. Metlife's address is One Madison Avenue, New York, New York 10010.

9. Defendant, the LTD Plan is an employee benefit welfare plan, as defined by ERISA, and its terms and benefits are the subject matter of this action.

10. Upon information and belief, the LTD Plan is sponsored and funded by Philips.

11. Metlife is the Claims Administrator for the LTD Plan, and pays benefits through a group insurance policy issued to Philips by Metlife.

12. The Plan Administrator for the LTD Plan is the ERISA ADMINISTRATION COMMITTEE c/o Philips Electronics North America Corporation, 1251 Avenue of the Americas, New York, New York 10020-1104.

13. The named agent for service of legal process for the LTD Plan is the Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

## STATEMENT OF FACTS

14. Prior to, and including, February 10, 2003, Plaintiff was employed by Philips as a Senior Electronic Nuclear Technician. During the years that Plaintiff worked for Philips, his position changed job titles, although the actual job requirements did not change. For

Example, Plaintiff's position was also known as the Field Service Engineer or Nuclear Service Engineer.

15. Mr. Fedderwitz' job duties required him to be responsible for installing and repairing nuclear cameras and computers associated with the operation thereof. Plaintiff's occupation required him to drive to remote work sites in New York City, upstate New York State, and parts of Connecticut.

16. Plaintiff was required to walk, bend, stoop, kneel, squat, climb ladders, and scaffolding, while carrying test equipment and machine parts of up to 100 lbs, plus the weight of his tool bag of 40lbs. Plaintiff's physical demands ranged from "heavy" to at least "light." As defined by the Dictionary of Occupation Titles, "Light Work" is defined as:

Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

17. As defined by the Dictionary of Occupation Titles, "Heavy Work" is defined as:

Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

18. Among other requirements, Mr. Fedderwitz' job required him to engage in the following demanding activities:

- May be required to be available 24 x 7 via phone or pager, required to rotate in an on-call status.
- Must possess a valid driver's license and good driving record.
- Travel up to 40% to the customer site, zone office or identified locations for meetings, training and business needs outside the zone.
- Average driving is 1 to 4 hours daily
- Carries or pulls up to 40 lbs of test equipment
- Lift parts or carriers parts weighing a few ounces to over 100 lbs.
- Frequent bends, stoops, twists, turns, and works in unusual positions using full body mobility
- May work from ladders or scaffolding on occasion.
- Potential exposure to hazardous physical, chemical and biological agents.

19. For the period beginning prior to February 10, 2003, Plaintiff, together with other regular employees of Philips, was covered as participants under the LTD Plan.

20. The LTD Plan provides for payment of monthly income benefits to participants of the Plan who become disabled. The monthly benefit is determined based on a set percentage of pre-disability eligible compensation elected by the participant and reduced by other income benefits as these terms are identified in the Plan.

21. The LTD Plan provides in relevant part:

The definition for Total Disability on or after January 1, 2002 states that:

For those who become disabled January 1, 2002 and after the definition of "disability" below will apply:

- For the first 2 ½ years, you will be considered disabled if you are unable to earn more than 80% of your indexed pre-disability earnings at your own occupation for any employer in your local economy.
- After 2 ½ years, you will be considered disabled if you are unable to earn more than 65% of your indexed pre-disability earnings from any employer,

>at any occupation for which you are reasonably qualified, taking into account your training, education, experience and pre-disability earnings.

(Philips Electronics North America Corporation Summary Plan Description, p8.)

22. Plaintiff worked for Philips since before it was called Philips, when it was called Picker International Inc. ("Picker"), and also before Picker, when it was known as Marconi Medical Systems ("Marconi"). Plaintiff started working for Phillips on October 2, 1989.

23. Plaintiff worked for Philips until February 10, 2003. Plaintiff was unable to work after that date due to his disabling medical conditions, including but not limited to his total knee replacement surgery.

24. Mr. Fedderwitz's disability stems from the combination of many factors. Specifically, Mr. Fedderwitz's disability stems from the debilitating surgery on his right knee, his scar tissue on his right lower extremity, which was caused by a third degree burn, diabetes mellitus, a myocardial infarction in 1995, problems with his thyroid gland, shortness of breath, as well as other cardiac conditions and/or procedures, such as atrial fibrillation, angioplasty, and bypass surgery. It is the combination or co-morbidity of these conditions which prevents him from working at such a physically demanding occupation.

25. Plaintiff timely filed for his Short Term Disability Benefits ("STD.") Based upon his disability Plaintiff received his full STD benefits, through and including August 11, 2003.

26. Plaintiff timely applied for his Social Security Disability benefits. By Notice of Award dated February 1, 2004, Plaintiff was found to be disabled by the Social Security Administration, as of February 10, 2003.

27. Because Plaintiff's injuries rendered him unable to return to work, he was rendered totally disabled within the definitions of the LTD Plan as outlined in the respective Summary Plan Description.

## PLAINTIFF'S CAUSE OF ACTION
## FOR LONG TERM DISABILITY BENEFITS

28. Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "27," as if they were fully set forth herein.

29. In compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for such benefits immediately upon leaving work on or about February 10, 2003 to have surgery on his right knee. Plaintiff underwent a total knee replacement of his right knee on February 11, 2003.

30. Plaintiff, based upon his total disability, received his full Short Term Disability benefit for six (6) months, until August 11, 2003.

31. On or about September 2, 2003, Plaintiff furnished Metlife with thirteen (13) pages of information and medical documentation. Plaintiff furnished Metlife with, among other things, an authorization, a copy of his resume, the "Long Term Disability Claim Form: Employee Statement," and a personal profile.

32. By Letter dated September 15, 2003, Metlife denied Plaintiff's application for his Long Term Disability benefits. Metlife erroneously stated that "the information provided is insufficient to establish a total disability as defined by your employer's plan."

33. Plaintiff once again provided medical and vocational information to Metlife in support of his application for Long Term Disability Benefits, which evidenced his total disability.

For example, Dr. Richard Legouri, Plaintiff's treating orthopedic surgeon, submitted an Attending Physician Statement dated October 30, 2003.

34. Contrary to the prior assertions, and based upon a finding of a total disability, Metlife, by letter dated November 3, 2003, approved Plaintiff's benefits, and confirmed that Plaintiff's long term disability claim was "paid through October 30, 2003."

35. Metlife, by letter dated December 1, 2003, terminated Plaintiff's long term disability benefits based upon an erroneous determination that "your claim for benefits no longer meets the criteria set forth in your Plan."

36. On December 1, 2003, Mrs. Fedderwitz spoke with Metlife regarding Metlife's use of an incorrect job description. Notwithstanding the fact that Metlife was made well aware that the job description they were using was incorrect, Metlife still terminated Mr. Fedderwitz's long term disability benefits.

37. On December 3, 2004, Metlife received a telephone call from the union representative, Tony Sangermino, regarding this very issue[1]. Mr. Sangermino inquired why did Mr. Fedderwitz have to file an appeal based upon the clear error, i.e. the erroneous job description. Notwithstanding the clear error, Metlife continued with the termination and has refused to correct its own mistake, forcing Mr. Fedderwitz to hire an attorney, and start this action.

38. Plaintiff, by letter dated February 4, 2004, appealed Metlife's adverse determination.

39. Metlife, by letter dated February 13, 2004 acknowledged receipt of Plaintiff's appeal.

---

[1] On December 3, 2003, Metlife received another call from Mr. Fedderwitz' employer, specifically from Ms. Nancy Manna from human resources. Ms. Manna also confirmed to Metlife had they had the wrong job description.

40. Plaintiff, through counsel, finalized his appeal by letter dated July 7, 2004, and July 17, 2004. Plaintiff's appeal was based, in part, upon Metlife's erroneous use of the wrong job description for " Team Leader, Electrical Engineering", and their failure to fairly evaluate Mr. Fedderwitz' medical conditions and the co-morbid effects each illness had on his ability to work in his own or any occupation.

41. Metlife, by letter dated July 8, 2004 acknowledged receipt of Mr. Fedderwitz' finalized appeal, and also provided notice that this claim "has been referred to an independent claim review."

42. By letter dated August 16, 2004, Metlife requested additional time to render a decision in this matter, as they were sending Plaintiff's "file to be reviewed by an Independent Physician."

43. Only two days later, ostensibly after the Independent Physician's review, Metlife, by letter dated August 18, 2004 upheld its termination of Plaintiff's long term disability benefits.

44. Metlife's "Independent Physician Consultant", was apparently board certified in occupational and environmental medicine. Plaintiff never received a copy of this physician's credentials, despite Plaintiff's request dated February 4, 2004, in clear violation of ERISA and its regulations.

45. Metlife did not have the file reviewed by an appropriately credentialed physician. Mr. Fedderwitz's main disability was the total deterioration of his right knee, and it would have been more prudent to have had the file reviewed by a board certified orthopedist, or orthopedic surgeon and not one certified in occupational and environmental medicine.

46. Based upon this superficial review, Metlife concluded that the "medical documentation currently in the file does not support a disability that would prevent Mr. Fedderwitz from performing his own occupation, as defined by the Plan."

47. Plaintiff received as part of the papers he requested from Metlife, a copy of a letter sent to a physician, for and entirely different claimant, but with the same claim number. This is a clear violation of this claimant's right to privacy, HIPAA, and deprives Plaintiff of any certainty that he received the complete claim file.

48. Plaintiff's physicians have sufficiently documented Mr. Fedderwitz' total disability.

49. Richard A Legouri, M.D., is a graduate of the University of Auto DeGuadaljara School of Medicine and completed his residence in surgery and orthopedic surgery at New York Hospital. He is board certified in orthopedic surgery and has hospital privileges at Mather Hospital of Port Jefferson, Southampton Hospital, and St Charles Hospital. He is licensed to practice medicine in New York and his license is in good standing.

50. Dr. Legouri, in an Attending Physician Statement dated February 11, 2003, stated that the "patient lacks full range of motion, right knee. Limited standing/walking, no climbing, squatting or bending." This clinical and objective finding is in clear contradiction to Metlife's determination.

51. Mitchell Saunders, M.D., is a graduate of the Brooklyn College of Medicine. He completed his residency in internal medicine at the Long Island Jewish Medical Center. He completed his residency in cardiovascular disease at New York University Medical Center. He is board certified in internal medicine and cardiovascular disease. He has hospital privileges at Mather Hospital of Port Jefferson, St. Catherine of Sienna Hospital

in Smithtown and St. Charles Hospital in Port Jefferson. Dr. Saunders has teaching responsibilities at Stony Brook University. He is licensed to practice medicine in New York and his license is in good standing.

52. Dr. Saunders, a cardiologist and treating physician, stated in a letter to Dr. Spinnato, that "[y]our patient, Ronald Fedderwitz, had repeat lab data that shows his cholesterol is still 220, HDL is low at 31, LDL is high at 117 and bad ratio of total cholesterol to HDL 7.1 and triglycerides are elevated at 377."

53. Dr. Saunders in a letter dated February 27, 2004, stated that Mr. Fedderwitz has been on anti-coagulation therapy since 1996 and that he had an episode of atrial fibrillation while undergoing a Thyroidectomy at Mather Memorial Hospital. Dr. Saunders also references an Echocardiogram performed on June 17, 2003 revealed a "mildly dilated left atrium at 4.3 cm, mild pulmonary hypertension with an RVSP of 42 mm Hg, trace aortic insufficiency, and mitral and tricuspid regurgitation." On October 15, 2003, Dr. Saunders opined that "[h]e can not even raise his arms above his head without losing his breath and feeling fatigued very quickly."

54. Paul Bohensky, M.D., is a graduate of the University of the West Indies in Jamaica. He completed his residency in internal medicine at the Veterans Affairs Medical Center and SUNY Stony Brook University Hospital. He completed his residency in pulmonary disease Stony Brook University Hospital. He is board certified in internal medicine, critical medicine and pulmonary disease. He has hospital privileges at Brookhaven Memorial Hospital. He is licensed to practice in New York and his license is in good standing.

55. Dr. Bohensky stated in a letter dated November 18, 2003, that:

> [a]s a result of his chronic lung disease, Mr. Fedderwitz's respiratory status is significantly restricted. This results in exercise limitation. He becomes short of breath easily upon mild exertion. Mr. Fedderwitz's abnormality results in a predisposition to respiratory infections for which he needs recurrent treatment."

56. Dr. Bohensky concluded that "[a]s a result of all of his medical problems, Mr. Fedderwitz is significantly limited and is essentially disabled at this time. This is most likely permanent." Dr. Bohensky in his pulmonary impairment questionnaire dated November 28, 2003, stated that within "1-2 hours" Mr. Fedderwitz would have to rest before returning to work."

57. Plaintiff was denied a full and fair review because during the appeal he was never provided a copy of Metlife's Independent Physician's credentials, nor was the medical documentation fairly reviewed, depriving the Plaintiff of a meaningful appeal, despite his requests for those documents, and ERISA's mandate of full disclosure.

58. Plaintiff has been, and continues to be, under the care of his treating physicians and continues to be "disabled" under the terms of the LTD Plan, which is insured by Metlife. The Defendants have not honored their fiduciary obligations and have failed to pay Plaintiff under the terms of the LTD Plan during his period of disability, and a full and fair review.

59. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the plan and thereby make decisions in accordance with plan language. Defendants have not acted according to their statutory obligation and have not acted in accordance with the plan language.

60. The Defendants' decisions were not supported by the medical evidence, did not apply the language of the SPD and, moreover, were tainted by Metlife's conflict of interest. As a result, Plaintiff never received a full and fair review.

61. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan, and the underlying SPD. Plaintiff is, therefore, entitled to the receipt of monthly LTD benefits pertaining to his disability from February 10, 2003, and continuing to the present under the terms of the LTD Plan and the SPD issued by Metlife.

62. As a result of the Defendants' arbitrary and capricious decision, Plaintiff has not received any monies to which he is entitled under the terms of the LTD Plan.

63. In light of Metlife's failure to comply with ERISA and its regulations, there is no decision to deferentially review and, as such, any review by this Court must be *de novo*.

64. Plaintiff was, and has remained, disabled within the terms and conditions of the LTD Plan since February 10, 2003.

65. Plaintiff is entitled to judgment against the Defendant Metlife in the sum of two thousand two hundred forty six and 54/100 ($2,246.54) per month, or as adjusted by the terms of the SPD, or for prior payments, from February 10, 2003, to the final date of this Court's determination, or expiration of the maximum benefit period.

**WHEREFORE,** Plaintiff, Ronald Fedderwitz, respectfully prays that this Court enter judgment against Defendants, Metlife, the LTD Plan, and the Plan Administrator, as follows:

A. That the Court declare and then determine that under the terms of the LTD Plan that the Plaintiff's disability began on or about February 10, 2003, and that he continues to be disabled within the LTD Plan's provisions and the terms of the SPD issued by Metlife;

B. That the Court award Plaintiff her attorneys' fees pursuant to 29 U.S.C. § 1132(g);

C. That Plaintiff receive such other relief as this Court deems just, proper and equitable under the circumstances, including interest, costs and disbursements, as to which he may be entitled.

Dated: November 28, 2005
Ronkonkoma, New York

BINDER & BINDER, P.C.

By: *[signature]*
Harry J. Binder, Esq (HJB 5450)
Attorneys for Plaintiff
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, NY 11779-7682
(631) 648-4700