LSK&D #: 564-6003 / 795810
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RONALD FEDDERWITZ,

                    Plaintiff,

-against-

METROPOLITAN LIFE INSURANCE
COMPANY INC.'S DISABILITY UNIT, as
Claims Administrator, PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION GROUP WELFARE
BENEFIT PLAN, and ERISA
ADMINISTRATION COMMITTEE, as Plan
Administrator,

                    Defendants.
-----------------------------------------------------------------x

No. 05 CV 10193
(BSJ) (HP)

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") (incorrectly sued as "Metropolitan Life Insurance Company, Inc.'s Disability Unit"), Philips Electronics North America Corporation ("Philips") Group Welfare Benefit Plan (the "Plan"), and ERISA Administration Committee ("Committee"), by their attorneys Lester Schwab Katz & Dwyer, LLP, submit the following statement of undisputed material facts pursuant to Local Rule 56.1.

**The Plan**

      1.     Philips established and maintains the Philips LTD Program which is part of the Philips Group Welfare Benefit Plan ("Plan").  (See Affidavit of Debra L. Silver ("Silver Aff.")," ¶ 2, Ex. A (Summary Plan Description ("SPD")), ML 226, 240-41.)[1]  The Plan is an

---

[1] "ML _____" refers to the Bates-stamped pages of the exhibits to the affidavits.  The zeros preceding the page number have been omitted.

employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (Id., SPD, ML 240-42)

2. LTD benefits provided under the Plan are funded by a group insurance policy issued by MetLife.  (See Affidavit of Laura Sullivan ("Sullivan Aff."), ¶ 3, Ex. A, ML 248.)

3. MetLife is the Plan's claims administrator.  (Silver Aff., SPD, ML 240)  In that capacity, MetLife has discretionary authority to determine eligibility for benefits. Specifically, the Plan provides that MetLife:

> shall have the exclusive right, power and authority in its sole and absolute discretion to administer, apply and interpret the plan and any other plan documents, and to determine eligibility for and entitlement to plan benefits. . . .

(Id.)  The Plan states that all determinations and interpretations made by MetLife with respect to benefit claims arising under the Plan "shall be final and binding" on all participants and claimants.  (Id.)

4. The Plan provides that, for benefits to be payable, "MetLife must have satisfactory evidence that you are totally disabled."  (SPD, ML 232)

5. The Plan defines "disability" as:

> For the first 2-1/2 years, you will be considered disabled if you are unable to earn more than 80% of your indexed pre-disability earnings in your own occupation for any employer in the local economy.

(SPD, ML 233)  The Plan defines "disability" after the initial "own occupation" period as:

> After 2-1/2 years, you will be considered disabled if you are unable to earn more than 65% of your indexed pre-disability earnings from any employer, at any occupation for which you are reasonably qualified, taking into account your training, education, experience and pre-disability earnings.

(Id.)

6.    The Plan further provides that LTD benefits "will be reduced by the amount you are entitled to receive from Social Security…."  (SPD, ML 238) "When Social Security disability benefits begin," the Plan states, "you will have to reimburse the Plan for any Social Security payments not deducted from the [LTD] payments you receive from the Plan."  (Id.)

**Fedderwitz's LTD Benefits Claim**

7.    Fedderwitz (date of birth November 3, 1940) worked for Philips as a senior electronics technician, repairing and maintaining medical equipment. (Sullivan Aff., Ex. B, ML 214, 215, 217)[2]  He is a high school graduate with two years post-secondary training in electronics.  (ML 213, 224)

8.    He last worked on February 10, 2003.  (ML 217)

9.    He underwent total right knee replacement surgery on February 11, 2003 to treat osteoarthritis of his knee and, or as a consequence of, burns and scarring suffered in a childhood accident.  (ML 210, 220)

10.    Fedderwitz received short-term disability benefits for the maximum six-month period (through August 10, 2003).  (ML 178)

11.    On his LTD benefits application dated September 2, 2003, Fedderwitz stated that his disabling condition was right knee replacement surgery.  (ML 217)

12.    On the benefits application, Fedderwitz listed his treating physicians as follows: Dr. Thomas Spinnata, primary physician; Dr. Richard Legouri, orthopedic

---

[2] All record references in this section are to the claim file, which is Exhibit B to the Sullivan Affidavit.

3

surgeon; Dr. Lee Shangold, surgeon who treated his thyroid tumor in 2002; and Dr. Mitchell Saunders, cardiologist. (ML 217)

13. In its letter dated September 15, 2003, MetLife requested additional information including office notes and an attending physician's statement ("APS"). (ML 190-91)

14. On an APS dated September 12, 2003, Dr. Legouri stated that his patient was totally disabled pending a re-evaluation on October 30, 2003, due to his knee replacement surgery. He noted that Fedderwitz still lacked full range of motion ("ROM") in his leg, was limited in his ability to stand and walk, and was not able to climb, squat or bend at all. Dr. Legouri indicated that Fedderwitz could drive. He could also lift up to 50 lbs. occasionally and up to 20 lbs. frequently. The only treatment plan was for physical therapy. (ML 197, 210-11)

15. MetLife also received physical therapy treatment notes. In a note dated May 19, 2003, therapist Bridgette Barnett stated that Fedderwitz's balance was improving; he could stand on his right leg only on a trampoline for more than 30 seconds. He was able to walk without assistive devices on all terrains. Ms. Barnett's impression was that Fedderwitz had made "significant improvement in all parameters of therapy: ROM, strength, ambulatory status and function." (ML 198)

16. MetLife also received an APS from Dr. Legouri dated October 30, 2003 (ML 169, 171, 173-74). Dr. Legouri indicated that Fedderwitz was still unable to work due to the lack of full ROM in his right knee and restrictions in standing and walking. (ML 174)

17. MetLife also received a treatment note from Dr. Legouri dated October 30, 2003 stating that Fedderwitz was "doing much better.  He has approximately the same range of motion he had pre-operatively except that he has less pain."  (ML 148)

18. MetLife requested and received a job description from Philips indicating that Fedderwitz's job entailed light physical demands in a typical office environment.  (ML 195)

19. MetLife approved Fedderwitz's LTD claim for the period August 11 through October 30, 2003.  (ML 170)

20. MetLife advised both Fedderwitz and Dr. Legouri that it needed more information in order to extend benefits beyond October 30, 2003.  (ML 144, 145)

21. After reviewing all medical information, including a referral to a nurse consultant (see ML 10), MetLife, in a letter dated December 1, 2003, denied LTD benefits beyond October 30, 2003.  Citing Dr. Legouri's office notes and physical therapy treatment notes, MetLife explained that Fedderwitz had made good progress after his knee surgery; he was able to walk without assistive devices; he had the same ROM he had while he was working; he had not been referred for pain management treatments.  MetLife's letter referred to his job as essentially office work.  MetLife informed Fedderwitz of his right to appeal the claim denial.  (ML 136-38)

22. Following the denial, MetLife was informed by Fedderwitz's spouse and his union representative that the job description it had relied on was incorrect.  (ML 12-13)  MetLife obtained from Philips a correct job description which described Fedderwitz's job as one involving the installation, repair and maintenance of electrical equipment, requiring medium to heavy physical demands and travel.  (ML 131-34)

23. After receiving the correct job description, MetLife's nurse consultant sought the opinion of Dr. John Thomas II, an independent physician consultant Board-certified in physical medicine and rehabilitation. (See Sullivan Aff., ¶ 5; ML 14-15.)

24. After reviewing the medical reports and correct job description, Dr. Thomas opined that it appeared that Fedderwitz's right leg had decreased ROM due to the effects of a childhood burn/scar condition, but he had been able to function on his job for many years. Dr. Thomas noted that Dr. Legouri's office notes showed that, post-surgery, Fedderwitz had improved with respect to pain, and had approximately the same right leg ROM as pre-surgery. As long as Fedderwitz could change physical positions on his job, Dr. Thomas opined, there was no medical evidence to support disability from his own occupation on the basis of his knee surgery after October 30, 2003. (ML 14-15)

25. At the request of Fedderwitz's attorney, Patrick Busse, MetLife provided him with a copy of its entire claim file on February 18, 2004. (ML 125, 127-28)

26. Through his attorneys, Fedderwitz appealed from the claim denial. (ML 112-122)

27. Among the materials submitted on appeal was a letter dated March 18, 2004 from Dr. Legouri reporting that Fedderwitz had been complaining of left knee pain for two weeks. As far as his right knee was concerned, Dr. Legouri reported that Fedderwitz was "doing well," with the prosthesis "in good position, no sign of infection or loosening" and "no real pain throughout range of motion." (ML 107-09) In a treatment note dated April 12, 2004, Dr. Legouri noted that Fedderwitz had full range of motion and was "doing well." (ML 109)

28. Also submitted was a letter dated October 15, 2003 from Fedderwitz's cardiologist Dr. Saunders, who reported a normal physical exam and normal EKG. Dr. Saunders noted that Fedderwitz's atrial fibrillation was under control through medications. Nonetheless, Dr. Saunders opined that Fedderwitz did "not appear to have the physical ability to return to work …." (ML 78-79) In a letter dated February 27, 2004, Dr. Saunders gave no opinion as to disability and concluded that Fedderwitz's atrial fibrillation and hypertension were both "well controlled" with medication. (ML 80-81)

29. Attorney Busse also submitted a report from Dr. Paul Bohensky, a pulmonologist, who stated he had been treating Fedderwitz's chronic restrictive ventilatory disease since 1997. (ML 53-60)

30. Fedderwitz had not listed Dr. Bohensky as one of his treating physicians on his LTD benefits application. (See ML 217.)

31. Dr. Bohensky opined that, because of symptoms of shortness of breath and fatigue, his patient was disabled from working. (ML 53-60) Dr. Bohensky did not support his opinion with objective tests, such as pulmonary function tests. Dr. Bohensky opined that Fedderwitz could sit for five hours and stand/walk for two hours in an eight-hour day, and could not lift over 10 lbs. (ML 56) In answer to the question "How often is patient likely to be absent from work as a result of impairments or treatments?", Dr. Bohensky answered "2-3 X a month." (ML 58)

32. MetLife referred the entire file, including the correct job description, to Dr. John Olmstead, an independent physician consultant Board-certified in occupational medicine. Dr. Olmstead concluded that the medical evidence did not support a finding

of total disability.  He found that Dr. Legouri's opinion on disability was not supported by his own examination nor by objective medical evidence.  Dr. Olmstead noted that Dr. Saunders' opinion as to Fedderwitz's disability due to a cardiac condition was similarly unsupported; inconsistently, Dr. Saunders reported that Fedderwitz's heart condition was being well controlled by medication.  Dr. Olmstead also stated that Dr. Bohensky's opinion of a disabling pulmonary condition was similarly not supported by objective testing such as a pulmonary function test.  Dr. Olmstead concluded that there was an absence of objective medical documentation of disabling functional impairments due to knee, respiratory or cardiac conditions.  (ML 26-30)

      33.    By letter dated August 18, 2004, MetLife upheld its initial claim denial, relying in part on IPC Dr. Olmstead's assessment that there was insufficient objective medical evidence of functional impairment severe enough to preclude Fedderwitz from returning to his job nearly nine months after his knee replacement surgery.  The uphold letter noted that Fedderwitz's orthopedist, Dr. Legouri, had inconsistently stated that his patient was totally disabled yet remarked in his progress notes that Fedderwitz was doing well, his right leg ROM was the same as pre-surgery, he had less pain, and was able to walk without assistive devices.  MetLife also noted that Fedderwitz's cardiologist Dr. Saunders had stated that his cardiac and high blood pressure conditions were being well controlled by medication.  Therefore, MetLife discounted Dr. Saunders inconsistent opinion that Fedderwitz was disabled.  Similarly, Fedderwitz's pulmonologist Dr. Bohensky supplied no documentation of the severity, frequency or duration of chronic respiratory symptoms which apparently were present while Fedderwitz had been working.  MetLife also noted the lack of objective tests, such as pulmonary function

tests, to support Dr. Bohensky's opinion that his patient was disabled.  In summary, MetLife concluded that there was insufficient credible medical evidence supporting Fedderwitz's claim that he was physically and functionally unable to return to work after October 30, 2003.  (ML 22-25)

**The Overpayment**

34.    In connection with his application for LTD benefits, Fedderwitz signed an "Agreement To Reimburse Overpayment Of Long Term Disability Benefits." (Sullivan Aff., Ex. B, ML 189)

35.    In his appeal letter dated July 7, 2004, Attorney Busse mentioned that the Social Security Administration had retroactively awarded his client Social Security Disability Income ("SSDI") benefits (although he did not provide the award letter).  (Id., ML 121)

36.    Based on information later supplied by Attorney Busse, MetLife calculated that, because of Fedderwitz's retroactive receipt of SSDI benefits, which are an offset to the LTD benefits under the terms of the Plan, Fedderwitz had received an overpayment of LTD benefits of $4,827.07 for the period August 11 to October 30, 2003.  (See Id., ¶¶ 6-10.)

Dated:     New York, New York
           September 15, 2006

Respectfully submitted,

LESTER SCHWAB KATZ & DWYER, LLP


_____/S/_____
Allan M. Marcus (AM-9027)
120 Broadway
New York, New York  10271
(212)  964-6611
Attorneys for Defendants
Metropolitan Life Insurance Company Inc.'s
Disability Unit, as Claims Administrator, Philips
Electronics North America Corporation Group
Welfare Benefit Plan, and ERISA Administration
Committee, as Plan Administrator


TO:

Patrick Busse, Esq.
Binder & Binder, P.C.
2805 Veterans Memorial Highway, Suite 20
Ronkonkoma, New York 11779-7682
(631) 648-4700
Attorneys for Plaintiff